THE STATE, TO THE USE OF McMAHAN & HUSTON *vs.* ROLLINS ET AL.

A sheriff to whom a *cap'as* was issued, returned: "This execution is returned not satisfied, there being no property of D found in B county whereon to levy and make the same, and the said D having taken the benefit of the bankrupt law." The writ was delivered to the sheriff sixty days before D made his application for the benefit of the bankrupt law of 1842. Plaintiffs instituted suit upon the sheriff's bond for his failure to arrest D. Held:

1. That D was protected from arrest from and after the time of filing his application to the bankrupt court.

2. That the sheriff had until the day of the return of the writ to execute it; and it devolved upon the plaintiffs to prove special circumstances to show that the sheriff was guilty of negligence between the period of the issuance of the writ and the application of D to the bankrupt court.

3. That it was competent for the sheriff (to show his inability to execute the writ) to prove that D was not in his county from the date of the writ to the time of filing his application to the bankrupt court.

THE STATE to the use of McMAHAN & HUSTON vs. ROLLINS et al.

### ERROR TO BOONE CIRCUIT COURT.

#### STATEMENT OF THE CASE.

The statement of this action fully appears in vol. 9, Mo. Rep. After the decision in that case, the cause was remanded and re-docketed for trial; and at the August term, 1848, came to trial upon the same state of pleadings. The plaintiffs gave evidence of the sheriff's bond, of the proceedings, judgment, and several executions against defendant, Dale, under McMahan & Huston's judgment, upon which the sheriff, Hamilton, principal, returned no goods; and the plurias execution dated 20th April, 1842, with a clause of capias, and the return, viz: "This execution is returned not satisfied, there being no property of Jesse B. Dale found in Boone county whereon to levy and make the same, and the said Dale having taken the benefit of the bankrupt law. August 15th, 1842, F. A. Hamilton, sheriff," and there closed.

The defendants offered to prove the inability of the sheriff to take the defendant, Dale's body, by reason of Dale's non residence in the county, and his evasion of the service by escaping from the county. This was objected to and rejected by the court. They offered evidence of the application of Jesse B Dale, by filing his petition on the 20th June, 1842, with the district court clerk of the U. States, to be allowed to take the benefit of the bankrupt laws of the U. States, and the subsequent proceedings of the court. The plaintiffs objected to it as incompetent, irrelevant, and not legally certified. The objection was overruled and the testimony admitted, to which exception was taken. This record contained the petition of Dale of the 20th June, 1842, oath taken before the clerk of that court of same date, a list of debts due, and an inventory of his property and his credits, an order of the clerk putting the application for hearing and ordering publication of it. After continuances till March term, 1844, when he was declared a bankrupt, and a final hearing fixed for next term, at which time a continuance was made for want of publication until March term, 1845. This was closed by the certificate of the clerk of its being a full record in the case, up to the 23rd of October, 1845, the date of his certificate. A certificate of final discharge was offered at the March term, 1845, attested by the clerk. This was all defendant's evidence.

The plaintiffs asked the following instructions, which were refused, and the opinion of the court excepted to:

1. "That although the jury find that Dale applied for the benefit of the bankrupt law on the 20th June, 1842, and proceeded regularly to final discharge, yet the return is evidence to show that there was full time prior to the application to have executed the *casa*, and is evidence of negligence in the sheriff."

2. "That pending the execution, being in force in the hands of the sheriff, no application for the benefit of the bankrupt law can avail the officer as an excuse for serving the writ; such application is a fraud against the creditor in such execution."

The defendants asked this instruction, which the court gave and the plaintiffs excepted.

"If the jury believe that during the existence of the execution given in evidence, and on the 20th June, 1842, Dale applied for the benefit of the bankrupt law of the United States; and that it was so proceeded on said application that he was afterwards, in March, 1845, duly discharged in pursuance of said act, the jury must find for the defendants, unless the sheriff was guilty of a breach of duty in not seizing the body of the defendant before that time; and there is no evidence of such breach of duty before the jury."

The plaintiffs thereupon took a non suit, and moved to set it aside, which motion was overruled, and the case brought to this court by writ of error.

### Todd for plaintiffs in error.

1 The record of the district court, Mo. District, is not duly authenticated. 1. A partial

transcript is offered of part of the proceedings. 2. An original certificate of final discharge, it not being in full of all proceedings. It is incompetent. 1. It shows no discharge or action of the court within the time the execution was in the officers hands. 2. It shows an application after the acts of neglect in the officer.

2. The instructions given were illegal. 1. The sheriff is bound to use all reasonable efforts to execute process. 10 Wend. 367. 2. Notice of the fact of defendants having no goods by his former return, and a ca-sa given him to execute, is reason for increased diligence, so as to save the debt. 15 Conn. Rep. 51. 3. The return of the sheriff admits the residence of the debtor defendant in the county, and of the fact of time to execute it. 4. The excuse for not seizing the body of the debtor, "that he had taken the benefit of the bankrupt law," is not proven true by an application, 60 days after the writ was received, to obtain the benefit of the bankrupt law. 5. If the excuse is not true in fact, the negligence of the officer is complete. 6. The negligence is fixed, even if application is made after a time admitted to have been sufficient to have found defendant debtor, and to have executed the process. 9 Mo. Rep. 24, 41, 794; 3rd Ala. Rep. 28; 1 Day, 128. 7. If any acts of negligence were proven, the facts should have been left with the jury.

## LEONARD for defendant in error.

1. The execution and sheriff's return thereon are not *prima facie* evidence of negligence on the part of the officer. This suit is for the sheriff's neglect in taking Dale's body in execution, and not for an insufficient return. In the first case, the sheriff is liable by statute for the whole debt. (Rev. Statutes of 1835, p. 260, sec. 52.) In the other he is liable only for the damages actually sustained.

The presumption of law is, that the sheriff did his duty; and here there is no evidence that Dale's body was within the county, or that it could have been taken by the use of the utmost diligence, unless it is contained in the sheriff's return.

Now admitting that the sheriff's return imports, as against himself, absolute verity (which by the bye is not always true, Bridges vs. Walford, 6 Maul & Selvin Rep. 42; Baker vs. McDuffie, 23 Wend. Rep. 291; Canada vs. Southwick, 16 Pick. 553, Williams vs. Cheesebouough, 4 Conn. Rep. 368,) yet it does not stop him from insisting upon any matter not inconsistent with the return. (Evans vs. Davis, 3 B. Mun. R. 344; Boynton vs. Willard, 10 Pick. Rep. 169, 170.) Nor does the return import that if it be insufficient in law, there is no legal excuse for the officer's failure to execute the writ, and that he has been guilty of negligence. If this were so, the plaintiff in a suit for the neglect to take the body, where the recovery is the whole debt, succeeds by proving an insufficient return when the recovery is the actual damage sustained.

2. Dale's application for the benefit of the bankrupt act protected his body from execution during the pendency of that proceeding, and excuses the sheriff's omission to take his body after his application, and the proceedings in bankruptcy were entitled to be read in evidence upon the certificate of the clerk, under the seal of the court. Pepoon vs. Jenkins, 2 John. cases, 119; Womack vs. McDearman, 7 Port. Rep. 514.

3. The mere fact that the execution was in the sheriff's hands sixty days before the defendant's application to the district court, does not of itself make out a *prima facie* case of negligence on the part of the sheriff. The presumption is that the sheriff did his duty, and the burthen of proving that he did not is on him who makes the alleged misconduct the ground of his action. The defendant may not have been in the county during the time, or if there, may have so concealed himself as to have escaped the most vigilant search. Besides, if Dale were in the county during all this time, in the absence of all direction from the creditor, or of knowledge on the part of the officer of danger resulting from delay, the sheriff had a right to serve the process at any time within the period prescribed by law. Tucker vs. Bradley, 15 Conn. Rep. 46.

NAPTON, J., delivered the opinion of the court.

We think the instruction given by the court was correct.

A sheriff has the whole period of the running of the writ within which to execute it, and if it is executed by the return day it is sufficient. This we understand to be the general and usual duty of the officer. There may be circumstances, however, under which he would not be justified in postponing for a day the levy of his writ. The condition of things may be such as to require immediate steps on the part of the officer to make the process available. The case of Douglass vs Baker (9 Mo. R. 41) was an instance of this character. There, the plaintiff in the execution, which was a *capias*, pointed out the defendant and required the officer to arrest him. So in any case, I apprehend, where the plaintiff will show property to the officer liable to the writ, and there is a propriety or necessity for an immediate levy, a failure of the officer to comply with such directions would be proof of negligence and hold him responsible for its consequences. In this case the plaintiff offered no such proof. On the contrary, the defendants offered to prove that Dale was not within the county or within reach of the officer prior to the 20th June, when the application for the benefit of the Bankrupt act was made. This proof was not admitted, doubtless upon the idea that the burthen of proving the negligence devolved upon the plaintiff. Had the proof been allowed, I do not think its introduction would at all have conflicted with the return, or with the principle adopted by this court in Boone county vs Lowry. That was a case where a sheriff returned a levy and a rescue, and finding that the rescue would not relieve him from responsibility, he offered to prove that the property he had levied on did not belong to the defendant in the execution.— Such proof, to say the least, would operate as a surprise upon the plaintiff. He might be expected to prepare for disproving a rescue or for denying its validity as a defence, if proved, but he could not anticipate the new ground for the first time assumed on the trial. The new defence contradicted his return, which admitted the goods levied on to have been the property of the defendant in the execution.

The case of Boone county vs Lowry was no doubt *stricti juris;* but its hardship arose from the retention of the ancient severity of the law which regulated the responsibility of sheriffs. The theory of the common law, upon which this strictness against rescues depended, that the officer could always prevent a rescue by exercising the power with which he was invested over the *posse comitatus*, is a mere theory in this age and in this country. To practice it in all cases might lead to la-

mentable consequences, and in our sparse population it may in truth be justly regarded impracticable. The law in this respect might be advantageously changed; but the court could not relieve against its hardship. The rule in Boone county vs Lowry, if applied to a different set of circumstances, would be highly equitable in its operations.

The evidence offered by the defendant in the present case did not conflict with nor contradict the return; it tended to establish its sufficiency, or rather to fill up a hiatus in the defence left by the return itself. The defendant, it will be observed, was not sued for an insufficient return, but for a failure to levy. The failure was admitted; but the excuse was that the defendant in the execution was a bankrupt and this excuse was set up in the return. This excuse might or might not constitute a full answer to the charge, according to circumstances, and the defendant, after proving the existence of the bankruptcy, proposed to go further and show circumstances, which, under the most harsh construction of the law, would totally exonerate him. I confess my impression is that the defendant might have completed his defence in this way.

This matter is however immaterial. The evidence offered was excluded and as it was excluded at the plaintiffs instance, he of course cannot object. The instruction stands upon the maxim of law that an officer is presumed to have done his duty until the contrary appears. The defendant had proved the bankruptcy; but the bankruptcy did not cover the entire period from the issuance of the writ until its return. There were two months during which the sheriff might have been required to execute the writ. The instruction assumed the law to be, that the sheriff had until the return day to execute his writ, and nothing appearing to the contrary, the presumption would be that no negligence had occurred up to the day when the defendant in the execution protected himself from arrest by his petition to the bankrupt court. If there were any special circumstances to show a dereliction of duty on the part of the sheriff, it devolved upon the plaintiff to show them.

Had the court admitted the testimony offered by the defendant, the result would have been the same, the plaintiff declining to offer any evidence.

The objection to the records of the District court in the bankruptcy case is not material in any point of view. No objection was made to the authentication of the record, but merely to its incompleteness. The only object of the record was to show the time when the application was made, and this was shown as well by a record obtained before the proceedings were completed as afterwards. The record was complete

in fact.   It purported to give a full record of every thing which had transpired in the court up to its date, and it was of no consequence in this case that the record was procured before the final judgment of the court.   But the certificate of discharge itself showed the date of the application, and the record was therefore useless, and its admission or exclusion could have been of no consequence in the case.

The other Judges concurring the judgment is affirmed.